The next case, number 171683, United States v. Brian Powell Can you see if you can move over the heat?  Good morning. May it please the court, my name is Jeffrey Langholz. I represent the defendant, McCullen, Brian Powell. I would like to reserve two minutes for rebuttal, please. Can you speak into the microphone? Thank you, Your Honor. I might save you some time by asking you to tell me why this case is different from Cameron? For a lot of reasons. First of all, there's been significant precedent after Cameron. We have Riley v. California. That's not saying it's different from Cameron. That's saying Cameron has been called into question by subsequent precedent. I think a helpful starting point would be, though, how do you distinguish Cameron? Based on Jones, Riley, and Ackerman, it's apparent right now that Mr. Powell had a valid expectation of privacy, and especially because of Jones, had a possessory interest in the electronic data paper and effects he created while using Omegle's Internet facilities. Jones established the connection between trespass, possessory interest, and there's a line of cases, starting from Terry, that clearly implicates the issue of seizure in this matter. Initially, this was posed as more of a search case, but because of Jones, and this is how it differs in many respects from Cameron, we now know that expectation of privacy is not the only factor involved in this case. In Cameron, it was the primary focus. Now we have Jones, Ackerman, Riley, and especially Jones focuses, besides the expectation of privacy, and Justice Sotomayor's theory, which changes the atmosphere and sets it apart from Cameron, but besides that, we have the whole problem with seizure of material that belonged to Mr. Powell. The mandatory reporting pursuant to 18 U.S.C. 2258A prevents Mr. Powell from excluding others to his property, others' access to his property. I thought in Cameron, as I read it, the only issue addressed is whether the ISP, if that's the right way to describe it in that case, was acting as a government agent or a private agent, and they concluded it was a private agent, so game over. But as I understand your argument, you're willing to concede that Omegle was operating as a private agent, and yet you still can win because there was a subsequent search by the government that you're contesting. Yes. And Cameron does not address that second issue. Absolutely. And in addition to a search, there was a seizure. And I understand that that depends on you developing the case law in a way that it has not yet developed, because the search undertaken here did not exceed the scope of the search by the private agent. So I understand that maybe under carpet or something could develop, but you still could win, but there's nothing the government did with respect to the material that wasn't done by the private agent. The problem is they seized. The court isn't focusing on the seizure. Okay, so that's your distinction, then, is that they seized it, and you'd have to treat the screenshots that were taken as property belonging to the defendant? Yes, that's part of the argument. What's your case for suggesting that the screenshots belong to the defendant for purposes of seizure law, as opposed to reasonable expectation of privacy? Well, we have Jones, and I think Jones supports that. I think that Ackerman also supports that conclusion. I think the plain language of the Fourth Amendment also supports that. There was a Third Circuit case. It's just the screenshots, literally, the physical screenshots, were never in the possession of your defendant. But he created them. He had a possessory interest in them. So just stepping back from that, in your brief there's a discussion of whether your client was given access to discovery. Yes. And I take it your position is he was not. It's ambiguous from the record. I can't make a definitive judgment on that. But, yes, I would say that he was not. Because I'm trying to understand the nature of your ineffective assistance claim, because I can discern two possible arguments you make, and I can't figure out which one you mean to make. One possible argument is the ineffective assistance of counsel was not giving the defendant access to discovery prior to the plea. And, in consequence, he was then prejudiced in the sense that, upon seeing the discovery, he realized he had a potentially meritorious Fourth Amendment claim, which, if he had known about, he probably would not have pled. That's the Fifth Circuit case you cite. Yes, sir. But you separately seem to be now arguing to us that the key to your claim is not that he has to prove only that there was a potential Fourth Amendment claim that prejudiced him, in consequence of the ineffective assistance of counsel in not giving him access to discovery. Instead, you seem to be arguing the prejudice came from defense counsel not making a meritorious Fourth Amendment claim that could have been made. Those are very different types of ineffective assistance claims. Which one are you making? The primary claim I was making was that the Fourth Amendment argument was meritorious. It does combine also with the other argument that the court just iterated. But, see, the standard for what kind of Fourth Amendment claim it has to be is different for purposes of the IAC claim, depending on which you're making, I think. Are you saying basically we just don't have a record that would permit us to find ineffective assistance of counsel for failure to provide access to discovery? That's exactly what I'm saying. So your only claim here is that there was a failure to provide a meritorious Fourth Amendment claim. I think the record was properly developed on the second aspect. I think a habeas action would have to go forward on the first issue. So I think the district court sufficiently created a record relative to the second prong that the court is inquiring about. I'm not too familiar with electronics, so I may be asking questions that don't make any sense. You will help me. Now, O'Malley automatically captured the screenshots. Is that correct? Yes, Your Honor. And they then forwarded to the National Center for Missing and Exploited Children Center. Yes, Your Honor. Is that known by people that use the screens or whatever you call them? Your Honor, the record did not address that issue. There are a... They did. I'm sorry? If we can conclude that someone using those chats is aware that this is going to be seen by people other than himself, what does that do to the expectancy of privacy? If the individual purposefully relinquishes the property and does so knowingly and voluntarily, that would be more problematic from Mr. Powell's perspective. But I don't think the record establishes that. Okay. Thank you. Thank you. Good morning. Seth Mayframe for the United States. Let me begin, as is clear from our brief, we do think Cameron controls, so let me address, Judge Barron, your notion, the suggestion that Cameron doesn't cover the situation here, that it was dealing with a slightly different question. What I would note in Cameron is that it begins with the discussion of the private search doctrine, which I think is the doctrine that applies. It says that a search of seizure, even an unreasonable one, is affected by a private individual not acting as an agent of the government. We know from Jacobson that even when there's a private search, you can still have a Fourth Amendment violation if the government exceeds the scope of the search. Correct. And Cameron doesn't address that section. Correct. So he's now presenting that issue. So what Judge Barbonoro, I guess, then did in pretty significant detail, was to create a record to say there was nothing additional. This falls within Jacobson. Now, if I understand the defendant, he's suggesting that in light of developments, including Carpenter, which is not yet fully developed, it is possible that in the digital realm it's a mistake to read Jacobson for all it's worth and just apply it as we apply it in the physical realm. So let me distinguish two doctrines that I think are getting merged together as one. We have a third-party search doctrine and we have a private search doctrine. And they're not the same thing. Right. The third-party search doctrine, which as I understand is what Carpenter's about, what Jones talked about, that's the idea that we expose information and because we've exposed it, the government can say, give it to us. Right, but here's the thing, just to give an example. Is your position that if Google, without telling any of its customers, has a person reading everybody's e-mail, they're then free to send those e-mails to the government and upon the government receiving all those e-mails, they can all be used against everybody? If they send e-mails that they have read and said, this e-mail is a crime, we're forwarding it to the government. And they routinely get an e-mail. Look, that's taking the third-party, the private search doctrine. But that's what Carpenter is in our case. That's not what they did in Carpenter. Carpenter is, when you're using your phone, it creates GPS data. It's stored out there. Government's filed a subpoena, says, give us all the GPS data. Nobody looked at it at the phone company. They just said, here's the data that you've asked for. Here, this is the same as... But all I'm saying is you recognize the reason you hesitated is because that seems a little bit shocking, that everybody's e-mail is suddenly at risk of being sent over to the government without anybody knowing that was the case. But everyone's mail is at risk, too. I mean, that's Jacobson, isn't it? The mail... You can't open the letter up. FedEx opened the package. If they resealed it and sent it to government, the government could reopen it? FedEx sent the open package to the government that then had white powder in it. FedEx discovered the white powder. FedEx... But FedEx doesn't have a policy of routinely opening everything without telling people. I can't answer that. I assume they do not. Right. So if Gmail suddenly started doing that, you could see the concern. What they're contending is if he didn't know that Omega was going to look at everything, then he's trying to say it's like the Gmail case. What's wrong with that? Now, maybe there's a thousand things wrong with it. Maybe there's no leverage to support it. As I understand it, so the way I distinguish these in my mind, the third-party search doctrine is a doctrine of reasonable expectation of privacy, trespass concerns, all those kinds of Fourth Amendment core issues. As I understood the private search doctrine, it brings a state action because the limitation that Jacobson says is the government can do absolutely not a single thing more than the private party did. So when the government is just repeating exactly what a private party did, we have no real state action there to be concerned about because the government hasn't done anything additional to what someone who's not covered by the Fourth Amendment did. We may think it's terrible. I guess this is my answer. We may think it's terrible what Google's doing in that case, and that's probably why Google isn't going to do that. But that's not a Fourth Amendment problem. That's a bad business problem, and the limitation that Jacobson places on it is that the government can't do a single thing more than what that private party did. I think that's really the genesis of the private search doctrine as opposed to the third-party search doctrine, which is a doctrine sounding of reasonable expectations of privacy. So your analogy would be if Google sent one of its employees to break into his home and find the photographs and steal them and came back and they looked at them at Google, but they could then give them over to the police and… Yeah, so let me take it out of the sort of… I think that is the analogy, and the doctrine would say there's no unlawful search because the government wasn't the one who did it. Also similar to the wife who says, on my husband's computer that I was looking at, I saw this child pornography image. Come look at it. But the question is whether something fundamentally has happened in the way information is stored, generated, and sent that we, for some reason, those analogies don't… The evidence is automated. I mean, these are decisions of companies that you may disagree with. I mean, as a matter of public policy, if Google… But Carpenter… You're saying that the key for why Carpenter wouldn't apply here is because the phone company doesn't know what's in the records that they're taking? I think that's why it's not a third… That's why it's not a private search case. That case isn't about Jacobson. That case is about whether you've exposed… They didn't deliver it to them. And that's why it's not a private search case. They didn't analyze it. They just… I mean, here… Just stored it. Jacobson… FedEx said, we have suspicious white powder. Here, government… The question in that case was whether the government did something wrong by then testing it. And that's really what Jacobson was all about, was that testing and incremental action that was more than what the private company did. And we can talk about that, but I don't think that has anything to do with this case because what happened in this case was the government did exactly what Omega did. It just looked at the picture. Can you… I'm sorry. I have to come back to this because I'm still confused. Does the record have… show how Omega receives these screenshots? There's an automated… They capture the data as it's coming in and it is not entirely clear why the auditor team that they have chooses to look at some, but not others, but real people. But… To do that, does somebody have to give their consent to that taking place? The record does not show the terms of service agreement, so I won't speak outside the record. Did the district court emits colloquy with the defendant when he walked them through it? As I read it, he seemed to assume the defendant had a reasonable expectation of privacy up through that moment. I think so. So that suggests that, at least for purposes of how he was deciding the case, he was assuming that the terms of service would not have provided that he would have known it was being looked at. Correct? Which is why, again, because if it… That's just like Ackerman, why they sort of… In Ackerman, then Judge Gorsuch says, look, maybe when you do full record review, you'll find out that he didn't have a reasonable expectation because terms of service will show others, but I'm not going to assume that he didn't have the expectation because there's no developed record. This case, with respect to that point, is identical to Ackerman, correct? Yes. The difference with Ackerman, and I think if you read Justice Gorsuch's opinion, he pretty strongly suggests that if they only looked at the one email, at the one image, that AOL had virtually looked at through hash value matching, no problem. What's the problem is that they looked at images 2, 3, 4, and 5 that nobody at AOL had done anything with rather than send over to the center. So that one image that AOL had looked at, I think the opinion fairly likely suggests probably not a problem, but because they went further and looked at things that AOL had not looked at, that created the fourth and end of the problem. In a lot of the analogies and cases we talk about, someone, not a government, gets the stuff, finds the information, however they do it, and we say that's private search, so no problem. Correct. Here there's actually a statute that mandates Omegle, as I understand it. Once Omegle decided to do its own search and it found this stuff, then it has kind of been deputized at that point it's required to turn it over. Does that change? So Cameron dealt with that. Cameron, I think, pretty squarely dealt with that and said, no, because what's important about the PROTECT Act is it doesn't require any Internet service provider to do this. They don't have to search. They don't have to look at anything. That's completely their choice. Once they make that choice, then there is an obligation on them if they find child pornography to notify the center. But the case law from this court says that fact of once you find it you must do something with it doesn't change the analysis. And suppose we get to the point where we know that as a matter of industry practice pretty much all of these Internet companies don't respect, in other words, they have you waive your rights to privacy just by pressing a button to use the program. Then have we got to a point where they're always going to know so they're always going to be compelled to turn it over? I think there's, again, there's a difference between, again, the third-party search doctrine which is this idea that you've sent an email because you've released it, right? You've sent an email. You've released it out of your care where anybody can see it because you've given up your expectation of privacy. That's not my argument. My argument is that when some... The thing is if those two things merge in the real way Internet information is transmitted and received such that your service provider, to do what they do, doesn't just receive it but always looks at it. If that's just the reality, then all of the concerns that are leaning the courts to start to second-guess some of this stuff when they translate it to the Internet world would seem to have some force here because otherwise your position is when you take Jacobson and you just treat it as if it's just like a regular case, just like if you treated the incident to arrest just like a regular case even though it's a phone that has all your world's information, you might be making a mistake. You might say you didn't develop the argument. There's a thousand reasons why maybe it doesn't work here. But I'm trying to figure out what the proposition you're asserting is because if you just say, well, automatically if they look at it, it's game over. I don't need to know anything more. The implications of that seem fairly significant. I guess you're sort of hypothesizing a set of business practices that I can't say exist. You can't say they don't exist here either. No, I can't. I can't say they don't exist. So I have to deal with the precedent as it does exist. And I do think there's a difference. When we talk about Riley, we talk about Sotomayor's concurrence in Jones. We're talking about a third... I understand the parallels you're making and I'm not saying that they're beyond the pale. I'm saying there is a state action problem when a third party does something and sometimes we have to rely on what we see in the news which is people don't like when their Internet service provider does certain things and there's pressure placed on them. But the Fourth Amendment may not be the answer to every technological problem that we have. So, thank you. Thank you, Your Honors. Tenaciously holding on to Miller and Jacobson is problematic. Those cases need to be restricted to the facts, those particular facts. That's evidence as the digital age advances. The Court talked about Google and email. What's more important also is cloud computing, things like Dropbox where people's files, business files, etc., are on the Internet. Anything that would be looked at could be turned over pursuant to the government's argument, which is plainly wrong and goes outside what the original intent of the Fourth Amendment was. So, adhering to those two precedents in this situation is problematic, Cameron by extension, because Cameron relied on Jacobson, which in many ways is no longer good law. The Court and the government sort of glossed over, I think, a bit of the argument that I'm making relative to the mandatory reporting. The mandatory reporting, what that does is it essentially seizes the government through the business provider, seizes the material. That's problematic. That's through compulsion. What's your best case for saying that what was seized was the defendants rather than the service providers? Common law. He created it. You'd have to go to common law tradition, I think. And Jones says that's what we need to do. We need to look towards... I don't have a possessory interest in the picture they take of it. If I create digital content, I have an interest in that. He created. He was authoring. Those are his papers. Those are his effects. He authored that. I'm sorry? He said he had a copyright in the video. I'm saying that pursuant to the Fourth Amendment, he authored those things. Those were his papers. Those were his effects. Thank you. Thank you.